**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MARK K. STRINGER,

      Defendant - Appellant.

No. 98-4203

(D.C. No. 96-CR-256)

(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **McKAY**, and **HENRY**, Circuit Judges.

---

Defendant-Appellant Mark Stringer was convicted following a jury trial on one count of conspiracy to defraud, twenty-four counts of mail fraud, nineteen counts of wire fraud, and one count of conspiracy to commit money laundering in violation of 18 U.S.C. §§ 371, 1341, 1343, and 1956, and of aiding and abetting in violation of 18 U.S.C. § 2. The convictions were based on his participation with several co-defendants in a fraudulent telemarketing scheme offering financial self-help programs to the public and patient-development services to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

dentists and orthodontists. On appeal Defendant argues that the district court erred when it denied his request that the judge disqualify himself. Defendant, a lawyer, further contends that he merely acted as corporate counsel and that the court erroneously enhanced his sentence under the United States Sentencing Guidelines applicable to defendants who are organizers or leaders in criminal activities and who abuse positions of trust.

We begin with the recusal issue. On the day before trial was scheduled to begin, Defendant moved for an order recusing the trial judge. In his memorandum and affidavit in support of the motion, Defendant stated that the trial judge, who formerly served as a United States Attorney, had been involved in the prosecution and settlement of an action against Defendant for his default on a student loan. Defendant asserted that the trial judge had acquired information regarding his financial dealings in the collections matter that would "affect [the judge's] perception of [him] and [his] credibility in this case." R., Vol. I, Doc. 180 at 2. Defendant and his investigator testified that they learned of the trial judge's participation in the earlier legal matter just two days before trial. The judge found the motion both "untimely" and "apparently lacking in merit," Tr., Vol. 1 at 151 (found in R., Vol. III), but withheld a final determination on the motion. When Defendant renewed the motion late in the trial, the judge denied it, stating that he found the supporting affidavit "to have absolutely no merit

-2-

whatsoever." Id., Vol. XI at 1906 (found in R., Vol. III).

Defendant further claims that statements made by the trial judge during the trial, but outside the presence of the jury, showed "bias or prejudice and a lack of impartiality." Appellant's Opening Br. at 16. Near the end of the trial, when Defendant's exhibits and jury instructions had been submitted late and in the improper form, the judge reproved the defense for "playing fast and loose with all of our procedural rules." Tr., Vol. XII at 2177 (found in R., Vol. III). During a discussion with Defendant, who had been represented by counsel during the trial but wanted to make his own closing argument, the judge questioned Defendant's motives, commenting "I don't know what you're up to." Id. at 2349. "The way you have conducted yourself during these proceedings with respect to me, with respect to the Court makes me wonder if you are up to good or up to no good. I don't know. I will not allow you to abuse the process of this Court." Id.

As further evidence of bias or partiality, Defendant points to a joke the judge made regarding Defendant's tie and whether it came from a store where debit card purchases had been made out of a trust fund supposedly protecting investors' funds. Defendant also calls our attention to the judge's reprimand at sentencing of Defendant's conduct as an attorney.

"The decision to recuse is committed to the sound discretion of the district court." United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992). We

review the denial of a motion to recuse for abuse of such discretion. See David v. City & County of Denver, 101 F.3d 1344, 1351 (10th Cir. 1996).

Judicial recusal for bias is governed by statute. Under 28 U.S.C. § 144, a judge must disqualify himself whenever a party presents a "timely and sufficient affidavit" that the judge has a personal bias or prejudice. Even in the absence of a motion, a federal judge must recuse himself in any proceeding where "his impartiality might reasonably be questioned." Id. § 455.

We assume for purposes of this opinion, but do not decide, that Defendant's recusal motion was timely. We hold, however, that Defendant's allegations, even if true, are not sufficient to show bias or prejudice. The trial judge's former prosecution of Defendant for default on his student loan does not require automatic disqualification. While the judge did represent the government in that action, we have expressly held that "a judge's prior representation of a witness or a party in an unrelated matter does not automatically require disqualification." David, 101 F.3d at 1351. We believe that a judge's former prosecution of a defendant in an unrelated matter falls within our ruling in David and therefore does not require automatic recusal. Furthermore, nothing in the record suggests that the judge even remembered the former prosecution, much less that he was biased against Defendant because of their former interaction. We conclude that "a reasonable person, knowing all the relevant facts [regarding the

former prosecution], would harbor [no] doubts about the judge's impartiality." Id. at 1350.

We also determine that Defendant has failed to present evidence of statements made during trial sufficient to require recusal. "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after they have been confirmed as federal judges, sometimes display" do not establish bias or partiality. Liteky v. United States, 510 U.S. 540, 555-56 (1994). "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases" do not constitute bias or partiality "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555. The trial judge's criticisms in this case evidence his irritation with Defendant, but they do not display such prejudice. Similarly, neither the joke about the necktie, while perhaps unfortunate, nor the court's reprimand of Defendant at sentencing indicates bias. The denial of Defendant's motion for recusal did not constitute an abuse of discretion.

We now turn to Defendant's argument that the trial court erred when it enhanced his sentence based on his role as an organizer or leader in the criminal activity. Defendant argues that the district court failed to make factual findings to support the enhancement. In the alternative, Defendant asserts that if the

district court did make factual findings, they were erroneous or insufficient to support the enhancement.

We review a district court's factual findings supporting a sentence enhancement for clear error. See United States v. Cruz Camacho, 137 F.3d 1220, 1223 (1998). We give "due deference to the district court's application of the guidelines to the facts," id. at 1224 (quoting 18 U.S.C. § 3742(e)), "reviewing the district court's conclusion that a defendant is a leader or organizer under § 3B1.1(a) [of the Sentencing Guidelines] for clear error." United States v. Tagore, 158 F.3d 1124, 1130 (10th Cir. 1998).[1]

Section 3B1.1 of the United States Sentencing Guidelines designates a four-level enhancement for a "defendant [who] was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Under the guidelines commentary, "the defendant must have been the organizer, leader, manager, or supervisor of one or more participants" or, if he was not, must have "exercised management responsibility over the property, assets, or activities of a criminal organization." Id. § 3B1.1, comment. (n.2). Additional commentary states:

---

[1]Precedent in this circuit on the appropriate standard for reviewing the determination that a defendant is a leader or organizer under § 3B1.1 is somewhat confusing. For a discussion of this issue, see Cruz Camacho, 137 F.3d at 1223-24. We follow the decision in Cruz Camacho determining that review for clear error is the appropriate standard. See id.

> In distinguishing a leadership and organizational role from one of mere management or supervision . . . [f]actors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Id., comment. (n.4).

In applying the guidelines, our circuit holds that an enhancement under § 3B1.1(a) is appropriate if a defendant is "either a leader *or* an organizer" and that "[i]t is not necessary to find the defendant exercised control over other participants to qualify for an organizer enhancement." Tagore, 158 F.3d at 1131. "A defendant may receive an enhancement as an organizer for devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the implementation of the conspiracy." Id. (quotation marks and citation omitted).

Contrary to Defendant's arguments, we conclude that the district court did enter findings to support the enhancement of Defendant's sentence. Observing that one of the prosecuting attorneys "was quite accurate in [the court's] view of what the evidence showed with respect to Mr. Stringer's involvement as a leader of this enterprise," the district court ultimately found "that the evidence at trial more than preponderates in favor of a finding that the defendant was an organizer or leader of the criminal activity that involved five or more participants and was

extensive." Sentencing Tr. at 11 (found in R., Vol. VI). The court announced this ruling at the sentencing hearing following the prosecutor's recital of evidence of Defendant's role. The prosecutor referred to trial testimony that Defendant attended management meetings and was an active decision maker in the scheme. Specifically, she noted that Defendant had set up the "Better Business Board" to deceive and defraud potential and actual customers, had vouched for the company as a trustee of certain customer funds, and had held himself out as an independent lawyer providing references for the companies involved in the fraudulent telemarketing scheme. She recounted testimony that Defendant directed certain participants in the enterprise to represent themselves as working for his law firm and testimony that Defendant managed a company trust account, taking a cut off the top of the receipts coming into that account. See id. at 6-11. While the court did not itself articulate these points of evidence, we conclude that the court's reference to their accuracy was sufficient to indicate that it had effectively adopted these statements as its findings on the matter.

Having reviewed the record, we conclude that there is no clear error in these findings, nor do we see any error in the district court's determination that the findings sufficed to support the sentence enhancement for Defendant's role as an organizer of a criminal activity that involved five or more participants. Consequently, we need not determine whether they sufficed to show that he

-8-

exercised control over other participants in the activity.

Finally, though Defendant does not challenge the two-level enhancement under § 3B1.3, he appears to use it to argue that the § 3B1.1 enhancement is erroneous. Section 3B1.3 provides that an adjustment for an abuse of a position of trust may be employed in addition to an adjustment under § 3B1.1, but that an adjustment under § 3B1.3 solely for the use of a special skill may not coincide with a § 3B1.1 adjustment. Defendant seems to claim that there were no findings showing whether the § 3B1.3 adjustment was predicated on an abuse of a position of trust or the use of a special skill and therefore that enhancement under § 3B1.1 is improper. At sentencing, the court commented that Defendant "authoriz[ed] the use of litigation in an abusive way and absolutely an improper and unjustifiable way." Sentencing Tr. at 44 (found in R., Vol VI). From this commentary and the fact that the court adopted as its findings the prosecutor's recital of the facts relevant to the enhancements, it is clear that the § 3B1.3 enhancement was based on an abuse of a position of trust as a lawyer. Accordingly, the court properly adjusted Defendant's sentence under both § 3B1.1 and § 3B1.3.

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge

-9-